# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRESOR MALEKA NDANDU,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM et al.,<br><br>Respondents. | Case No.: 3:25-cv-02939-RBM-MSB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Doc. 1] |

Pending before the Court is Petitioner Tresor Maleka Ndandu's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 challenging the lawfulness of his detention by United States Immigration and Customs Enforcement ("ICE"). (Doc. 1.) For the reasons set forth below, the Court **GRANTS** the Petition.

## I.    BACKGROUND

### A.    Factual Background

Petitioner is a citizen of the Democratic Republic of Congo ("DRC"). (Doc. 17 at 2.)[1] In 2013, Petitioner was convicted of a state felony. (Doc. 13 at 2.)[2] On June 13, 2022,

---

[1] The Court cites the CM/ECF pagination unless otherwise noted.

[2] Per the Court's sealed order issued on November 18, 2025 (Doc. 2), the Petition was filed under seal. The Court therefore cites to the Amended Petition (Doc. 13) which is a redacted version of the original Petition.

an immigration judge ordered Petitioner removed but granted him deferral of removal to DRC under the Convention Against Torture ("CAT").[3] (Doc. 17 at 2.) ICE released him "a couple of days later [and] placed an ankle monitor on him for about one week." (Doc. 13 at 2.) ICE then removed the ankle monitor and informed Petitioner that "he did not have to check in with them again." (*Id*.)

Earlier this year, Petitioner was arrested for a misdemeanor offense and held at the San Diego County Jail until he posted bail. (*Id*. at 6.) On September 8, 2025, ICE re-detained Petitioner while he was attending his scheduled superior court hearing. (*Id*. at 2–3.) During his arrest, ICE informed him that "his name had come up in their system" but did not state the reason for his re-detention and did not provide him with any paperwork. (*Id*. at 4.) Petitioner claims that "[h]e has never been offered an informal interview or a chance to contest his re-detention" and that "no one has told him that he violated the conditions of his release." (*Id*. at 6.) Petitioner also claims that "ICE has never asked him to fill out travel document paperwork to any country" or talked to him about his removal. (*Id*.) While in detention, Petitioner requested information about the reasons for his detention and status updates in his case. (*Id*. at 7.) ICE responded "that they were still reviewing his case." (*Id*.) Petitioner remains detained at the Otay Mesa Detention Center and his "misdemeanor case was dismissed after he was detained." (*Id*. at 6.)

**B.    Procedural History**

On October 30, 2025, Petitioner filed the Petition (Doc. 1), a Motion for Under Seal Filing (Doc. 1-5), a Motion for Appointment of Counsel (Doc. 3), and a Notice of Motion and Memorandum of Law in Support of a Temporary Restraining Order ("TRO Motion") (Doc. 4). On November 18, 2025, the Court issued an order under seal granting Petitioner's

---

[3]  Deferral of removal under CAT is a limited form of relief afforded only to noncitizens who are barred from receiving withholding of removal. 8 C.F.R. § 1208.17(a). Deferral bars a noncitizen's removal to a particular country but allows, among other options, removal to another country where there is no likelihood of torture. § 1208.17(b)(2).

Motion for Appointment of Counsel (Doc. 3) and granting in part and denying in part the Motion for Under Seal Filing (Doc. 1-5). (Doc. 2.) Pursuant to the Order's order, Petitioner filed redacted versions of the Motion for Appointment of Counsel (Doc. 14), the TRO Motion (Doc. 15), and the Petition ("Amended Petition") (Doc. 13).

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III. DISCUSSION

Petitioner claims he is being detained by United States Immigration and Customs Enforcement ("ICE") in violation of "his statutory and regulatory rights, *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the Fifth Amendment." (Doc. 13 at 3–5.) Petitioner also claims ICE may not remove him to a third country "without providing an opportunity to assert fear of persecution or torture before an immigration judge." (*Id.* at 4–5.)

The Court first addresses Petitioner's claims concerning the alleged regulatory violations and third-country removal before turning to the constitutionality of his ongoing detention under *Zadvydas*.

### A. Agency Regulations and Third-Country Removal

Respondents argue that even if ICE did not comply with its regulations, Petitioner has not established prejudice or a constitutional violation. (Doc. 16 at 6.) They also claim that ICE will provide Petitioner written notice and refer him "to an asylum officer for processing of [any asserted] fear-based claims" once a third country is identified rather

than immediately deport him. (*Id*. at 9 (quoting Doc. 16-1, Declaration of David Townsend ["Townsend Decl."] ¶ 14).)

Respondents' arguments are identical to those recently addressed by the undersigned in *Azzo v. Noem*, Case No.: 3:25-cv-03122-RBM-BJW, 2025 WL 3535208 (S.D. Cal. Dec. 10, 2025). There, this Court held that "Respondents: (1) [had] not met their burden under *Zadvydas*; (2) violated the regulations in §§ 241.4(l) and 241.13(i)" when the petitioner did not receive an informal interview until a month after was re-detained; "and (3) must provide [the petitioner] with adequate notice and an opportunity to be heard before removing him to a third country." *Azzo*, 2025 WL 3535208 at *2, 5. The Court also rejected similar arguments concerning prejudice and found the "[p]etitioner was prejudiced by ICE's failure to comply with its own regulations." *Id*. at *6; *see also Ghafouri v. Noem*, No. 3:25-CV-02675-RBM-BLM, 2025 WL 3085726, at *6 (S.D. Cal. Nov. 4, 2025); *Rasakhamdee v. Noem*, Case No.: 3:25-cv-02816-RBM-DEB, 2025 WL 3102037, at *5 (S.D. Cal. Nov. 6, 2025)

Here, Petitioner's claims concerning Respondents' regulatory violations and third-country removal are stronger than in *Azzo*. Like in *Azzo*, Respondents plan to remove Petitioner to a third country but admit "there is no record in the A-file showing that Petitioner was provided a Notice of Revocation of Release or provided an informal interview regarding the reason for the revocation of his release." (Townsend Decl. [Doc. 16-1] ¶ 8.) The Court therefore adopts its reasoning as to these issues and applies it here. ICE's failure to comply with its regulations in revoking Petitioner's release renders his detention unlawful and warrants release. *See Azzo*, 2025 WL 3535208 at *5.

However, Petitioner also argues that his continued detention is unconstitutional under *Zadvydas*. Petitioner is differently situated from the petitioner in *Azzo* because he has been in detention for less than the six-month presumptively reasonable period prescribed in *Zadvydas*. In light of this distinction, the Court addresses the constitutionality of Petitioner's continued detention separately and finds that Petitioner has established there is no significant likelihood that he will be removed in the reasonably foreseeable future.

**B.    *Zadvydas***

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022). Under this statute, a noncitizen ordered removed must be detained for 90 days pending the government's efforts to secure the noncitizen's removal through negotiations with foreign governments. *See* 8 U.S.C. § 1231(a)(2). Section 1231(a)(6) "authorizes further detention if the Government fails to remove the [noncitizen] during those 90 days." *Zadvydas*, 533 U.S. at 682. The statute, however, is limited to "a period reasonably necessary to bring about [the noncitizen's] removal from the United States" and "does not permit indefinite detention." *Id.* at 689.

Petitioner contends that "his detention is not authorized by statute or due process" because the 90-day removal period has expired and he has sufficiently demonstrated there is no significant likelihood that he will be removed in the reasonably foreseeable future. (Doc. 17 at 4–6.) The Court addresses each argument in turn.

**1.    Rebuttable Presumption**

Respondents argue that "Petitioner has been in post-final order detention for a total of about three months. . . . [and his] present detention is still within the six-month period that *Zadvydas* found to be presumptively reasonable." (Doc. 16 at 3.) Petitioner responds, arguing that he may challenge his continued detention as unconstitutional because the 90-day statutory removal period has expired and the six-month presumptively reasonable period of detention is rebuttable. (Doc. 17 at 4–5.)

In *Zadvydas*, the Supreme Court recognized a six-month presumptively reasonable period of detention after a noncitizen's removal order becomes final. 533 U.S. at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The Supreme Court later clarified its holding in *Zadvydas* and explained that:

> *Zadvydas* did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, since interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention *only for a period consistent with the purpose of effectuating removal*. . . . If [it] were, as the Government seems to believe, free to 'interpret' statutes as becoming inoperative when they 'approach constitutional limits,' [the Supreme Court] would be able to spare [itself] the necessity of ever finding a statute unconstitutional as applied.

*Clark v. Martinez*, 543 U.S. 371, 384 (2005) (emphasis added).

Multiple district courts have found that the six-month presumption is rebuttable. *See Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018) ("The Supreme Court in *Zadvydas* outlined a 'guide' for approaching these detention challenges . . . not a prohibition on claims challenging detention less than six months.") (quoting *Zadvydas*, 533 U.S. at 700–01); *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) ("At no point did the *Zadvydas* Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period."); *Uzzhina v. Chestnut*, No. 1:25-cv-01594-DAD-SCR, 2025 WL 3458787, at *3 n.3 (E.D. Cal. Dec. 2, 2025) ("The fact that a noncitizen has been held in-custody less than six months does not foreclose a claim that his or her detention is unlawful under *Zadvydas*."); *Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025) (noting that "what *Zadvydas* did make clear was that it was adopting a presumption—not a conclusive bar to adjudication of whether continued detention is authorized that lifts only after six months have elapsed"). Under Respondents' proposed interpretation of this regulation, "the Government would be permitted to detain noncitizens ordered removed for up to six months even when their removal is impossible." *Zavvar v. Scott*, Civil Action No. 25-2104-TDC, 2025 WL 2592543, at *5 (D. Md. Sept. 8, 2025).

The Court agrees with these courts' reasoning and finds the six–month presumption in *Zadvydas* is rebuttable. *See Clark*, 543 U.S. at 387 (O'Connor, J., concurring) ("[T]he 6-month presumption . . . in *Zadvydas* . . . , is just that—a presumption.").

### 2. Significant Likelihood of Removal

Although Petitioner has been detained for less than six months, he argues that he has overcome the presumption of reasonableness under *Zadvydas* because: (1) he cannot be removed to his country of origin; (2) removals to third countries are historically rare; (3) ICE tried and failed to remove him during the 90-day detention period; and (4) Mexico, the only country ICE identified, declined to accept him. (Doc. 17 at 9.) The Court agrees.

The Supreme Court set the "presumptively reasonable period of detention" under 8 U.S.C. § 1231(a)(6) at six months. *Zadvydas*, 533 U.S. at 701. After the six-month period, a petitioner is entitled to release if he "*provides good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future" and the government is unable to rebut that showing. *Id.* (emphasis added).

Generally, "a 'presumption' can be rebutted only by contrary evidence." *Godoy v. Spearman*, 861 F.3d 956, 965 (9th Cir. 2017); *see also* Fed. R. Evid. 301 ("In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption."). As such, within the six-month period, "the petitioner must claim and *prove* [ ] that his removal is not reasonably foreseeable" to overcome the presumption. *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025) (emphasis in original); *see also Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wis. 2008) ("[T]he presumption scheme merely suggests that the burden the detainee must carry within the first six months . . . is a heavier one than after six months has elapsed."). District courts must "measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the [noncitizen's] presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*.

In this case, Petitioner was granted deferral of removal to the DRC and no alternative countries were designated in his removal order. (*See* Doc. 16 at 2, 4; Doc. 17 at 2.) This presents a legal impediment to Petitioner's eventual removal because he may not be removed to the DRC—the only country he has a claim to citizenship—as long as the

1 deferral of removal remains in effect. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006) (holding the petitioner sufficiently established no significant likelihood of his removal in the reasonably foreseeable future based on his grant of asylum and CAT protection because "the government [was] not entitled to remove him to Sri Lanka, and no other country has been identified to which he might be removed."); *cf. Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008) (denying habeas relief where there was no evidence that the petitioner's destination country will not accept him or that his removal was otherwise barred to show he was unremovable).

Petitioner references data showing that between 2020 and 2023 "ICE removed . . . only *five* non-citizens granted withholding or CAT relief to alternative countries." (Doc. 17 at 2–3 (quoting *Munoz-Saucedo*, 789 F. Supp. 3d at 398) (emphasis in original).) He also states that in 2017, "there were at most 21 people of the thousands with withholding of removal deported to *any* country [which] includes dual citizens who only received withholding from one of their two other countries of origin." (*Id.* at 3, 7 (citing American Immigration Council & National Immigrant Justice Center, *The Difference Between Asylum and Withholding of Removal*, 7 (Oct. 2020)) (emphasis in original).) While "historical outcomes do not necessarily control the result in any particular case, the data nevertheless supports the general inference that removal for this particular class of detainees is substantially more difficult." *Munoz-Saucedo*, 789 F. Supp. 3d at 398.

Even when authorized, third country removal still requires the affirmative assent of the receiving country. 8 U.S.C. § 1231(b)(2)(E)(vii). Petitioner asserts that "foreign governments 'routinely deny' requests to receive people who lack a connection" to their countries, as he does. (Doc. 17 at 7 (quoting *Puertas-Mendoza v. Bondi*, Case No. SA-25-CA-00890-XR, 2025 WL 3142089, *3 (W.D. Tex. Oct. 22, 2025)).) Although several countries have agreements with the United States to accept third-country deportees, Petitioner identifies facts that make his removal to such countries unlikely. (*Id.* (citing Jacqueline Metzler, *What Are Third-Country Deportations, and Why Is Trump Using Them?*, Council on Foreign Relations (Sept. 3, 2025)).) As Petitioner notes, he has a

serious criminal history, mental health conditions, and has asserted his fear of being removed to any African country. (*Id*. at 7–8; *see* Doc. 1-3 ¶ 10 (declaring that Petitioner faces danger in other African countries) (filed under seal); Doc. 1-4, Ex. C at 5 (discussing Petitioner's mental health diagnoses) (filed under seal).)

Indeed, since Petitioner was granted deferral of removal over three years ago, no countries have been identified to which he might be removed. *See Nadarajah*, 443 F.3d at 1082. Nor is there an indication that any country is willing or currently considering accepting him. *See Munoz-Saucedo*, 789 F. Supp. 3d at 400. On October 6, 2025, almost a month after Petitioner's re-detention, ICE submitted a resettlement request to Mexico which declined to accept Petitioner. (*See* Doc. 16 at 5 (citing Townsend Decl. [Doc. 16-1] ¶ 10); Doc. 17 at 9.) Aside from this resettlement request, it appears that ICE has not made further inquiries to any other countries. The only other evidence of ICE's ongoing efforts to remove Petitioner is a statement that on October 17, 2025, ICE's local Enforcement and Removal Operations ("ERO") sent a request to ERO's headquarters for assistance identifying other potential countries to which Petitioner may be removed. (Doc. 16 at 5; Townsend Decl. [Doc. 16-1] ¶ 9). ICE's local ERO "last contacted HQ RIO on November 13, 2025, for possible third country removal." (Townsend Decl. [Doc. 16-1] ¶ 11.) Based on these statements, it appears the local ERO had not received a response to either request at the time of Respondents' filing on December 1, 2025. *See Conchas-Valdez v. Casey*, No. 25-cv-02469-DMS-JLB, 2025 WL 2884822, at *3 (S.D. Cal. Oct. 6, 2025) ("[T]he Government's minimal work on this case—one resettlement request and two follow up emails over the course of seven months—do not instill confidence that it will be able to secure [the] [p]etitioner's removal in the reasonably foreseeable future.").

Even if ICE were to identify a third country, Petitioner maintains his removal is unlikely in the near future because he is entitled to "raise a fear-based challenge to his removal to any other country than the DRC" resulting in "potentially 'additional, lengthy proceedings.'" (Doc. 17 at 10 (quoting *Munoz-Saucedo*, 2025 WL 1750346 at *7).) In particular, Petitioner "would certainly seek to raise a claim of fear of persecution upon his

removal to any African country." (*Id.*) Indeed, Petitioner may apply for such relief especially in light of his CAT findings. *See* 8 C.F.R. § 1208.17(b)(2) (providing that an immigration officer must inform the noncitizen that he "may be removed at any time to *another country where he or she is not likely to be tortured*.") (emphasis added); 8 U.S.C. § 1231(b)(3) ("[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion"). While such proceedings may only delay removal, "[t]he fact that [Petitioner] likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings, further demonstrates that removal is not likely in the reasonably foreseeable future." *Zavvar*, 2025 WL 2592543, at *8.

Respondents argue that "it would be premature to conclude that there is no significant likelihood of removal in the reasonably foreseeable future before permitting ICE an opportunity to complete its diligent efforts to effect Petitioner's removal." (Doc. 16 at 5–6.) But Respondents' good faith efforts alone do not render a noncitizen's detention reasonable as this would require that a noncitizen "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable—which demands more than [the Supreme Court's] reading of the statute can bear." 533 U.S. at 702 (emphasis added); *see Conchas-Valdez*, 2025 WL 2884822 at * 3.

Accordingly, Petitioner has sufficiently established that his removal is not reasonably foreseeable and that his ongoing detention is not reasonably necessary to secure his removal. *See Zadvydas*, 533 U.S. at 699–700; *see, e.g.*, *Munoz-Saucedo*, 789 F. Supp. 3d at 398–400 (finding no significant likelihood of removal as to a noncitizen with withholding of removal who was detained after over two years on release because he cannot be removed to his country of origin, ICE has historically low success rates in removing similar individuals, and multiple requests to other third countries were denied). Petitioner's detention is therefore no longer reasonable or authorized by statute.

## IV.  CONCLUSION

Based on the foregoing reasons, the Petition (Doc. 1) is **GRANTED**.  Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to his preexisting Order of Supervision.

2. Respondents and their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are **PROHIBITED** from removing Petitioner to a third country without notice and a meaningful opportunity to be heard, following the process laid out in *D.V.D. v. United States Dep't of Homeland Sec.*, Civil Action No. 25-10676-BEM, 2025 WL 1453640 (D. Mass. May 21, 2025).[4]

3. The TRO Motion (Doc. 4) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATE:  January 5, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[4] This relief has been granted in similar matters. *See Louangmilith v. Noem*, Case No.: 25-cv-2502-JES-MSB, 2025 WL 2881578, at *4 (S.D. Cal. Oct. 9, 2025); *Y.T.D. v. Andrews*, Case No. 1:25-CV-01100 JLT SKO, 2025 WL 2675760, at *13 (E.D. Cal. Sept. 18, 2025); *Kumar v. Wamsley*, CASE NO. C25-2055-KKE, 2025 WL 3204724, at *9 (W.D. Wash. Nov. 17, 2025).